Case 3:24-cv-00336   Document 29   Filed on 12/18/25 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
December 18, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JESSICA SMITH, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:24-cv-00336 |
| | § | |
| UNIVERSITY OF TEXAS MEDICAL BRANCH, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## AMENDED MEMORANDUM AND RECOMMENDATION[1]

In this employment discrimination case, Plaintiff Jessica Smith alleges that The University of Texas Medical Branch at Galveston ("UTMB") discriminated against her on the basis of her religion when it failed to accommodate her religious beliefs. UTMB has filed a motion to dismiss. *See* Dkt. 15. Smith, representing herself, responded to the motion and requested an opportunity to supplement her complaint to add a promissory estoppel claim.[2] *See* Dkt. 17. For the reasons discussed below, I recommend that the motion to dismiss be denied.

## BACKGROUND

Smith worked as a telephone triage nurse at UTMB for approximately eight years. In early 2022, UTMB issued a policy requiring all its employees and

---

[1] On November 13, 2025, I recommended that the court dismiss Smith's lawsuit based on Smith's failure to complete and return UTMB's COVID-19 vaccine exemption form, which deprived UTMB of notice of Smith's bona fide religious belief. *See* Dkt. 26 at 7. But Smith provided notice of her bona fide religious belief to UTMB through a rebuttal letter that UTMB received prior to terminating Smith's employment. Thus, she has pleaded facts sufficient to infer that UTMB was on notice of her bona fide religious belief. Accordingly, I withdraw my November 13 memorandum opinion, order, and recommendation and offer this recommendation instead. Because I offer this recommendation instead, I also recommend that Smith's motion for reconsideration be denied as moot. *See* Dkt. 28.

[2] If Smith wants to amend her complaint to add a promissory estoppel claim, she may do so within 14 days after this memorandum and recommendation is adopted. I express no opinion on the legal sufficiency of Smith's promissory estoppel claim.

contractors to be fully vaccinated against the COVID-19 virus or face termination. UTMB advised its employees and contractors that they could request an exemption from the vaccine mandate based on a "recognized medical condition(s) for which vaccines are contraindicated or religious beliefs, observances, or practices." Dkt. 1-1 at 7. An employee seeking an exemption from the COVID-19 vaccination policy for religious reasons was required to complete a two-page form. That form asked the employee to "identify the particular, sincerely held religious belief, observance or practice that you would violate or forgo in receiving a COVID-19 vaccine." *Id.* at 5. The form also asked employees to "[d]escribe how receiving a COVID-19 vaccine conflicts with your sincerely held religious belief, observance or practice." *Id.* According to the complaint, once an employee completed the religious exemption form, "a board of area religious leaders" would review it and determine whether to approve an exemption from the vaccination policy. Dkt. 1 at 9.

Smith contends that she "holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine." *Id.* at 17. On October 2, 2021, Smith declined to receive the influenza vaccine "[d]ue to a matter of conscience," as shown on a "Season Influenza Vaccine—Declination Statement" that was provided to UTMB. Dkt. 1-1 at 4. Yet, Smith "did not complete [UTMB]'s form to request a religious exemption [from the COVID-19 vaccine] because of [what she perceived to be] the form's intrusive nature and because [she] was unable to obtain a spiritual leader's attestation as to the sincerity of [her] beliefs." Dkt. 1 at 12.

On February 16, 2022, UTMB notified Smith via an intent-to-terminate letter that she "will be no longer eligible to work at UTMB after March 18, 2022," due to her failure to either receive the COVID-19 vaccine or "an approved exemption and accommodation." Dkt. 1-1 at 7. UTMB gave Smith the opportunity to respond by March 18, 2022, "in writing if any of [the] facts are incorrect or if there are any reasons why this action should not be taken." *Id.* at 7–8. On March 14, 2022, Smith submitted a rebuttal letter to UTMB's intent to terminate. In that letter, she wrote:

> Like most modern pharmaceuticals, the mRNA and other COVID-19 "vaccines" were developed/created using aborted fetal tissue. Abortion is an aberration to God and is the murder of a living human being. Proof of this is in Exodus 20:13, "You must not commit murder." To extinguish the life of an unborn, innocent human being is wicked enough, but none should profit from such a despicable practice. I will never knowingly introduce the products of these abominable child sacrifices into my body.

Dkt. 1-1 at 13–14.

Smith alleges that she "informed [UTMB] of [her bona fide religious] beliefs in writing and requested to be allowed to telework as a reasonable accommodation," but that "[UTMB] refused to engage in the interactive process with [Smith] regarding her religious accommodation request." Dkt. 1 at 18. UTMB terminated Smith's employment on April 19, 2022, for failing to comply with its COVID-19 vaccination policy by either becoming fully vaccinated or obtaining a medical or religious exemption.

In her complaint, Smith alleges that UTMB discriminated against her on the basis of her religion in violation of Title VII of the Civil Rights Act of 1964 by failing to accommodate her religious beliefs. UTMB has moved to dismiss Smith's lawsuit for several reasons. First, UTMB argues that Smith's failure to timely effect service should result in dismissal. Second, UTMB contends that Smith's lawsuit is untimely because she did not file her lawsuit within 90 days of receiving her right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). Third, UTMB insists that Smith has failed to state a religious discrimination or religious failure-to-accommodate claim. I will examine each argument below.

## LEGAL STANDARD

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In

evaluating a Rule 12(b)(6) motion, a court may consider: (1) the pleadings and any attachment to the pleadings; and (2) documents that a defendant attaches to its motion to dismiss if those documents are referenced in the plaintiff's complaint and are central to the plaintiff's claim. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up).

## ANALYSIS

**A.    SMITH'S FAILURE TO TIMELY EFFECT SERVICE IS NOT A REASON TO DISMISS THIS CASE**

UTMB's first argument is that Smith's lawsuit should be dismissed because she failed to timely effect service on UTMB. Smith filed her original complaint on November 21, 2024. She did not properly serve UTMB until July 22, 2025, or 244 days after the lawsuit was filed. Smith contends that service was delayed because she mistakenly assumed that a summons would be issued automatically. Once she realized that was not the case, Smith requested a summons and had UTMB served.

The Federal Rules provide that:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Even if good cause is lacking, a district "court has discretionary power to extend the time for service." *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008). "A discretionary extension may be warranted, 'for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.'" *Id.* (quoting Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment).

4

"[W]here the applicable statute of limitations likely bars future litigation, a district court's dismissal of claims under Rule 4(m) should be reviewed under the same heightened standard used to review a dismissal with prejudice." *Millan*, 546 F.3d at 326. "Dismissal with prejudice . . . is an extreme sanction that deprives a litigant of the opportunity to pursue his claim." *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 247 (5th Cir. 1980). Consequently, the Fifth Circuit has limited a district court's discretion to dismiss claims with prejudice to those cases in which "a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice." *Millan*, 546 F.3d at 326 (quotation omitted).

A plaintiff alleging a Title VII claim must file a civil action no more than 90 days after she receives statutory notice of her right to sue from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1). Dismissing Smith's lawsuit for lack of timely service would preclude Smith from pursuing her Title VII claims. That would be incredibly unfair given that Smith is a pro se litigant who, quite understandably, does not have a firm grasp of the procedures surrounding the issuance of a summons. Because nothing in the record before me suggests that the delay in service was intentionally caused by Smith or that UTMB has been prejudiced in any way, this court lacks discretion to dismiss this action for untimely service. *See Millan*, 546 F.3d at 326. Thus, I recommend that the motion to dismiss for untimely service be denied.

**B.     SMITH'S FAILURE TO TIMELY FILE HER LAWSUIT IS SAVED BY THE EQUITABLE TOLLING DOCTRINE**

UTMB next argues that Smith's Title VII claim should be dismissed because it is untimely. As discussed, Smith had 90 days from the date she received her right to sue letter from the EEOC to file a civil action. *See* 42 U.S.C. § 2000e–5(f)(1). "The ninety-day window is strictly construed and is a precondition to filing suit in district court." *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009) (quotation omitted).

Smith admits that she received her EEOC right to sue letter on August 22, 2024. *See* Dkt. 1 at 1. Smith was thus required to file her lawsuit by November 20, 2024. Although Smith put her lawsuit in the mail on November 19, 2024, the Clerk's office did not receive Smith's complaint until November 21, 2024, one day outside the applicable limitations period. "[C]ompliance with a Filing requirement is not satisfied by Mailing the necessary papers within the allotted time. The papers must be filed by the clerk within the filing period specified in the applicable rule or order." *Lee v. Dallas Cnty. Bd. of Ed.*, 578 F.2d 1177, 1178 n. 1 (5th Cir. 1978). UTMB insists that this one day delay precludes this court from deciding this matter. I disagree.

Title VII's filing period is subject to equitable tolling. *See Bernstein v. Maximus Fed. Servs., Inc.*, 63 F.4th 967, 970 (5th Cir. 2023). "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)). "As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). Instead, a court must "draw on general principles to guide when equitable tolling is appropriate." *Id*. Generally speaking, "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 477 U.S. 250, 255 (2016) (quotation omitted).

This is not a case in which Smith haphazardly placed her complaint in the mail, uncertain of when it would arrive at the courthouse steps. On November 19, 2024, Smith paid $36.10 to deliver the complaint to the Galveston federal courthouse overnight. *See* Dkt. 17 at 37. The receipt clearly shows that she paid for one-day service, with a scheduled delivery date of November 20, 2024. *See id*.

6

Unfortunately, the postal service did not timely deliver Smith's mailing as promised on November 20, 2024. For whatever reason, the lawsuit did not arrive at the Galveston federal courthouse until November 21, 2024. Smith cannot be blamed for the postal service's tardiness, as she exercised due diligence in pursuing her rights. In Smith's own words, she "made an honest and good faith effort to effect timely filing of her complaint." *Id.* at 5.

Equitable tolling is "to be applied sparingly." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). This case, however, presents a rare and exceptional circumstance that warrants applying the doctrine. To deny equitable relief here would send a message to pro se litigants that the only way to ensure a document is timely filed is if they personally deliver that document to the courthouse. In the present case, that is unworkable considering that Smith lives in Mount Pleasant, Texas—a town more than 300 miles from the Galveston federal courthouse. Smith took reasonable steps to ensure that her complaint reached the courthouse by the November 20, 2024 deadline. A strict adherence to the 90-day statute of limitations would be inequitable here. As I have stated before, this "Court will go to great lengths to exercise its discretion to ensure a litigant has an opportunity to present her case to a judge or jury—especially when circumstances completely outside her control would otherwise slam the courthouse door in her face." *Jefferson v. Haza Foods*, No. 3:17-cv-00359, 2018 WL 5268756, at *6 (S.D. Tex. Oct. 5, 2018). Accordingly, I recommend that UTMB's motion to dismiss for Smith's failure to timely file her lawsuit be denied.

C.   **SMITH HAS STATED A RELIGIOUS FAILURE-TO-ACCOMMODATE CLAIM**

I now turn to UTMB's argument that Smith fails to state a religious failure-to-accommodate claim under Rule 12(b)(6).

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). "Title VII . . . requires employers to accommodate the religious observances or

7

practices of applicants and employees." *Hebrew v. Tex. Dep't of Crim. Just.*, 80 F.4th 717, 721 (5th Cir. 2023) (citing 42 U.S.C.. § 2000e(j)). "An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).

To plead a Title VII failure-to-accommodate claim, Smith must allege that: "(1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Davis v. Fort Bend County*, 765 F.3d 480, 485 (5th Cir. 2014) (quotation omitted). Although Smith does "not have to submit evidence to establish a prima facie case of discrimination at this stage, [Smith must] plead sufficient facts on all of the ultimate elements of a [failure-to-accommodate] claim to make [her] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

UTMB argues that Smith's claim fails because (1) Smith "did not initiate [UTMB's established process for requesting a religious exemption] by choosing not to fill out the UTMB form [for requesting a COVID-19 exemption]"; and (2) because "[i]nstead of requesting religious exemption, [Smith] requested a '100% work from home exemption.'" Dkt. 15 at 15. Neither of UTMB's arguments is availing.

Smith attached the March 21, 2022 rebuttal letter that she sent to UTMB to her complaint. *See* Dkt. 1-1 at 9–15. Accordingly, that letter is considered part of Smith's pleadings and is properly considered on a motion to dismiss. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). In that rebuttal letter, Smith articulated her bona fide religious beliefs and quoted scripture. *See* Dkt. 1-1 at 13–14. While Smith's complaint could be clearer about the timeline of events, the attachments to her complaint show that UTMB received her rebuttal letter—and thus, were on notice of her bona fide religious beliefs and

8

her need for a religious accommodation. UTMB received Smith's rebuttal letter well in advance of terminating her employment on April 19, 2022. Accordingly, it is plausible that UTMB should have accommodated Smith or at least engaged in the interactive process before terminating her.

UTMB makes too much of Smith's refusal to complete its COVID-19 exemption form. "An employee is not required to use magic words to make a legitimate request for a religious accommodation under Title VII, but they must at least say something to indicate their need for an accommodation." *Swanson v. Lilly USA, LLC*, No. 1:23-cv-00831, 2024 WL 4815867, at *8 (S.D. Ind. Nov. 15, 2024) (quotation omitted). While Smith might not have put UTMB on notice of her need for a religious accommodation prior to UTMB sending her an intent-to-terminate letter, UTMB unquestionably knew about her need for a religious accommodation after it received her March 21, 2022 rebuttal letter, and before it terminated her employment.

UTMB also makes too much of the fact that Smith styled her request as a work-from-home exemption, rather than a COVID-19 exemption. "An employee may object to an employer's vaccine mandate on both religious and non-religious grounds." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024). Thus, Smith's phrasing of her request as a work-from-home exemption does not change the fact that UTMB had written notice that she would not take the COVID-19 vaccine, at least in part, because she believed it to be profiting from murder, which she considers "an aberration to God" based on certain scripture. *See* Dkt. 1-1 at 13–14. This was enough to put UTMB on notice of Smith's bona fide religious belief and her need for a religious accommodation. Accordingly, Smith has plausibly stated a religious failure-to-accommodate claim. Smith's failure-to-accommodate claim should not be dismissed at this early pleading stage.

**D.    SMITH HAS STATED A RELIGIOUS DISPARATE TREATMENT CLAIM BASED ON A FAILURE TO ACCOMMODATE**[3]

Finally, I must address UTMB's argument that Smith fails to state a Title VII religious disparate treatment claim under Rule 12(b)(6).

UTMB argues that Smith cannot state a religious disparate treatment claim because she "has not alleged any facts supporting" "membership in a protected class," "that she was qualified for the position," or "that she was treated less favorably than was a similarly situated employee outside the protected class." Dkt. 15 at 13. If this were a racial or sex discrimination case, then UTMB might have a point. But UTMB has identified the wrong standard for a religious disparate treatment claim based on a failure to accommodate a religious practice, which is the type of claim that Smith advances in this case.

"[T]he rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). "An employer violates Title VII if the employee requires an accommodation of a religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in his decision to terminate the employee." *Hebrew*, 80 F.4th at 724 (cleaned up). "This 'motivating factor' standard is 'broader than the typical but-for causation standard' and encompasses many claims of religious discrimination." *Id.* (quoting *Nobach v. Woodland Vill. Nursing*

---

[3] If I were to look only at the headings in Smith's complaint, it would seem that she has alleged only a failure-to-accommodate claim. But federal courts "hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints." *Chhim*, 836 F.3d at 469. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). So long as Smith "plead[s] factual allegations that raise the right to relief above the speculative level," she can state a claim, even if she does not expressly name that claim in her complaint. *Chhim*, 836 F.3d at 469. As discussed below, Smith pleads factual allegations that raise her right to relief on a religious disparate treatment claim based on a failure to accommodate above a speculative level.

*Ctr., Inc.*, 799 F.3d 374, 378 (5th Cir. 2015)). "[M]otive is especially easy to infer where an employee has submitted a request for an accommodation or where the employer knows of the employee's religious practice." *Hebrew*, 80 F.4th at 724.

Here, after giving Smith notice of its intent to terminate her employment, but prior to actually doing so, UTMB knew that Smith refused to receive the COVID-19 vaccine because she believed the vaccine to be a "profit from the termination/murder/abortion of a human life," contrary to a biblical commandment not to commit murder. Dkt. 1-1 at 14. Thus, UTMB knew, at a minimum, of Smith's religious belief that prevented her from receiving the COVID-19 vaccine. That is enough to survive the pleading stage.

## CONCLUSION

For the reasons set forth above, I recommend that UTMB's motion to dismiss Smith's Title VII religious failure-to-accommodate claim and religious disparate treatment claim be denied.

As a general rule, the parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Because the holidays are upon us, I will extend the deadline for either side to objection to my memorandum and recommendation until Friday, January 9, 2026. Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 18th day of December 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE